Good morning, Your Honors, and may it please the Court. My name is Eleanor—I'm sorry? Good morning. Good morning. May it please the Court, my name is Ellen Notewear, and I represent the appellants in this case, Isabelle Botello, Simon Pfeiffer, and Kari Whalen. These three individuals were all students who were enrolled and paid tuition and extra fees to attend classes in person on the campus of Loyola University during the spring 2020 semester. Appellants respectfully request that the Court reverse the District Court's dismissal of the complaint in this matter. Ms. Notewear, before you get too far down the road, can I just confirm, please, you are not appealing the Court's standing ruling with respect to the parents, is that correct? That is correct. Okay, thank you. So that doesn't matter since we had—I'm sorry? And I have a second question. Is there any kind of a force majeure issue presented here to the extent that Loyola was forced by the pandemic and the governor's stay-at-home order to switch to online-only learning? And I gather you are not challenging the course of action that Loyola took. Correct on that last part, we are not challenging the course of action. This is an action for partial refund of the fees, such as the parking fee. Right, but is there any kind of force majeure issue presented? Well, I think what you're talking about, impossibility of performance or something of that nature? Right. Remember, this case was at the—we just filed a complaint and we were dismissed out of pocket without any of that being—we're not disputing that Illinois required closure, we're just saying that they should get some of their money back. And that does not implicate a force majeure issue. And possibility of performance is not something that is addressed at the motion to dismiss stage typically. Okay. Okay. And I wanted to make sure I answered the first question, which is, so we originally filed with a parent who paid the tuition. Her son is also a plaintiff, so we had it covered both ways, and other plaintiffs, other individuals joined. All right. Thank you. Okay. I wanted to address the three things that the court, I think, got wrong. And the first is on the doctrine of educational malpractice, which the district court erroneously found bars a breach of contract case such as the one that the appellants brought here, which is seeking fee and tuition reimbursements. The court ignored Ross v. Creighton, which is the applicable precedent from the Seventh Circuit. And that case, if you read it, makes it clear that educational malpractice is not a doctrine that bars this case. Educational malpractice is meant to bar a case where the court is required to assess the general quality of education. So those are typically academic decisions, grading, whether somebody met the requirements to graduate, whether they should be admitted. Those are things the court, no one's disagreeing that the court should stay out of those things and that colleges and universities, professors should make those decisions unfettered by the court. Are you claiming at all that your clients did not receive a quality education online? We're not really getting into that. We're saying it's two different things. But are you alleging that they may be two different things, but are you claiming that as part of your breach of contract that you should get your refund because the quality of the education that they received online was not the same as they would have received in the classroom? That is not what we are claiming. We're claiming it's two different things, two entirely different things, as Loyola made clear by having two different websites, two different everything for online versus in-person classes. There's a residential report. If we allow the breach of contract tuition claim to proceed past the pleading stage, is it possible that Loyola might nonetheless prevail on this claim? In other words, could you envision that Loyola might be able to show that students ultimately were not deprived of anything material as a result of the switch to the online instruction? I mean, you know, even on campus, instruction often involves the use of prerecorded lectures, videos, teaching assistants, written materials, and other things that may not comport with the model of a professor having give and take with students in person. That is true, that there are, that is not this case. This is a residential campus-based program that, I know you've read our briefs, there are 3,200 times in the course catalog, which is the binding document here. Under Illinois law, which the court ignored, the documents, such as the course catalog, are where we find the terms of the contract. Now, your question got to, at the end of all this, you reinstate this case as we think is proper, and we go through all the discovery, and we go through all the discovery about how our clients were injured, right? You would say they weren't damaged at all, right? But they were, right? Because they got something different. They may not have even enrolled in a $45,000 program if they weren't going to be getting what they were promised, face-to-face interaction with professors and other classmates and laboratories. Ms. Notewear, if the lack of in-person education didn't impact the quality of the education, which you said it didn't a moment ago, what's the injury from not being in person? First of all, I didn't say it did. You said, did it apply to the breach of contract claim? I don't think the breach of contract claim requires it. It's also true. Well, there's an injury element to breach of contract, and I asked you, were you alleging that the quality of the education was impacted from not being in person? And you said no. So to pick up along the lines of what Judge Rovner is asking, if it's not the quality of education that's impacted from not being in person, what's the injury from not being in person? Well, the injury is clear here because they charge different amounts, and this is just on a tuition claim. Remember, we also have fee claims for the parking and everything else that they didn't get. Some courts have made a distinction there. If we're just talking about tuition, there is a difference in how Loyola itself priced these two products, an in-person versus the online remote. And they said you pay different amounts for credit for that. So they're admitting that there's a difference. And that's- My guess is, and I don't know that it's in the record, and I realize we're at the motion to dismiss stage, but my guess is the online program is much different than the in-person in terms of classes offered. You can't take every class in the course catalog online. My guess is there are a limited number that are offered for this program. But I understand we're at the motion to dismiss stage. Right, but that goes to the fact that there's a difference. You can't even have those. If there's a dance class that isn't even offered online, doesn't that show that they haven't received the value of what- Yes, but following up on St. E's question to you, as I understand it, prior to the pandemic, Loyola offered online learning for a distinct set of degree programs. And of course, not for every single program, not for every single course. How does that affect your claim for breach of contract, if at all? I think it supports it. It shows that, like I said, take the example of the dance class. That wasn't offered online. So what is a dance major paying for if they're not getting in-person instruction? Well, an awful lot of people do exercise, for instance, with an exercise teacher on a TV screen. And they're charged different rates. So if I take Jane Fonda's video, that's different than taking a class live, a live dance class, or a live yoga class, or jazzercise, or whatever it is. I'm paying a different amount because the market, I mean, this is the Seventh Circuit, law and economics. An economist can value those things. You can look at that. That's what we intend to do, is to have expert evidence to look at what the differences are between what people will pay for an online version. One of the cases that we cited, the judge compared it to seeing Hamilton on Broadway versus seeing Hamilton on Disneyland. There's a difference. And there's a value. You can look what you pay for a ticket for Hamilton on Broadway versus what you pay for a ticket, or you don't pay for a ticket, or you pay to see the same content in a different format is charged differently. And if you looked at our complaint, we talk about the change.org petition that 2,000 Loyola students signed saying that they didn't get what they were promised. And they might not have even signed up for this. This is real money to students. And one of the things I wanted to say from a policy perspective is, of course, we're all very sympathetic to universities. They're wonderful places. But we should be sympathetic to students who are paying $45,000 to get the equivalent of Hamilton Disney instead of Hamilton on Broadway. And that's something that needs to be addressed. And that's something that's... This is a breach of contract claim. Yes. What is your best evidence of a promise to the students as opposed to just a suggestion or puffery on the part of Loyola? You have to have a promise for a specific benefit. You have to have a promise for that live Hamilton. What's your best evidence of that? Well, we have... It's in our complaint. If you look at... We attach the course catalog, which under Ross v. Creighton and other says, the course catalog is what you look at. There isn't a formal contract between students and universities, right? That's the problem here. So the law in Illinois and elsewhere is you look at all these other things, the course catalog, the statements that are made. So in our complaint, we attach, as you do in a breach of contract case, the course catalog. If you search the course catalog that was in effect, the 2019 to 2020, spring 2020, 3,200 times it says, in person. In person, in the catalog. Then we attach something that we found online that shows how LOCUS, which is the way that you register, the online portal for Loyola that was in effect. The student has to go in. They go through their basket of cases. They pick their cases. It says, probably some of the clerks have done this more recently than some of us. But you pick your cases, your classes, you put them in a basket. You click okay, I accept these. It says where they are. It says that they're in person. It says what campus they are. It says, be careful, make sure you're not taking one too far away from each other, which implies they're going to be in person. It's an implied promise. These cases find that there's a contract when there's implied promise. Here, it says 3,200 times, in person. So that's an express promise. I have a question about one of your other pieces of evidence, which is the financial disclosure. There, the language is, you are agreeing to pay your tuition, your bills, when they come due, unless the terms of this agreement are changed by Loyola. The this agreement there, the language, this agreement, isn't that properly read as just an agreement between the student and Loyola, that the student will pay tuition and bills owing Loyola, but not an agreement about in-person classes? Where in the disclaimer do you find that implied promise of an in-person class? Again, if you look back at Ross v. Creighton, it says, look at the totality of the documents, the totality of the circumstances. We included all of those documents to give you the total picture. And I think what the district court got wrong here is they looked at one thing. They said, you've attached the residency requirement. Where in the residency requirement does it say in-person classes? Well, it might, it implies if you have a residency requirement and that you have a vibrant campus, that if it says in-person 3,200 times in the course catalog, those things read together, the totality, is there's an implied promise. Does that answer your question? Yes. And so I think it's not just that one document read by itself. I think it's all of them together. And I'd have to look back at that particular language. And I wanted to, my time is short. I don't know if I'll see the rest of my time at this point. Thank you, your honors. Thank you. Good morning, your honors. May it please the court. My name is Kirsten Milton. I am counsel for Defendant Loyola in this case. This case is straightforward. This case is about whether there is an identifiable contractual promise between Loyola and its students guaranteeing in-person instruction for the entire 2020 spring semester. And if there is, there's a question. Ms. Milton. Yes. It appears to me that the emerging majority view among courts around the country is that allegation of the types made here are sufficient to state a claim for breach of contract as to the tuition and or fees charged for on-campus learning. What, if anything, about Illinois law is different or unique that would point to a different result in this case. You know, other states, very much like Illinois, appear to bar claims for educational malpractice and to require a disappointed student to be able to point to a specific promise that was made in course catalogs and the like in order to pursue a claim for breach of contract. And yet, courts in those states have found these claims for in, rather on-campus, in-person instruction to be viable. So. So, Your Honor, I think a couple of things. First, with respect to the educational malpractice piece in the way courts across the country have found, here in this case, plaintiffs specifically plead that the value of the online education was worth less.  and that there was a difference in the quality of instruction. They continue to claim throughout their complaint that the online program was worth significantly less. That is different than some of the other cases across the country where the plaintiffs have not necessarily tied the value of the in-person education to the online program. And with respect to the breach of contract claim, in Illinois, the courts make very clear that often there is not an express contract between a university and students to provide in-person education or to provide any education at all that often has to be implied. And yes, we agree, you look at a number of documents to determine whether those documents taken together constitute an implied contract to provide in-person services. And the plaintiffs in this case have not pointed to anything to say that in the middle of a pandemic, Loyola was required, contractually required, to provide in-person classes for the entirety of the spring 2020 semester. Look, Loyola, like many other universities, was charging distinctly lower fees for online learning than for on-campus instruction. As that judge in Florida put it, surely those on-campus students are paying for something. So why isn't it reasonable to infer from the differential fee structure that Loyola was impliedly promising on-campus students something that they lost in the switch to online-only instruction? Your Honor, I think the problem with that argument is you're having to make an inference as to why there is a difference in cost between the online program and the traditional program. And plaintiffs are asking the court to infer that that price differential is due solely to the fact that the traditional programs, typically pre-pandemic, were provided in person. But there could be a whole host of reasons as to why the online program had a different cost. Well, wouldn't those whole host of reasons be better suited to investigation and discovery after the pleading stage then, so that Loyola can bear that out? No, I think the problem is that Illinois law says when plaintiffs plead a breach of contract claim, they have to plead an identifiable contractual promise. So as Judge Gettleman noted in his opinion, to infer that the difference between traditional online goes against Illinois law, which requires at the pleading stage an identifiable contractual promise. But the federal pleading rules still apply, and we're still bound to draw all reasonable inferences in plaintiffs' favor. And given the discrepancy in pricing, why wouldn't it be a reasonable inference in plaintiffs' favor that it's because they were getting something more in person? So one, Judge Gettleman, despite what plaintiffs said, he expressly acknowledged that he was drawing all reasonable inferences in plaintiffs' favor. And I think that it's not reasonable here. I don't think that there is a reasonable inference here that the difference in traditional learning and online is due solely to the in-person aspect. There could be, you know, the odd. Would it have to be solely? Why couldn't it be that there, there might be some other benefits of an increased fee, but one of them is certainly that you're in the classroom, you get to see the professor. I think all of us who have lived in the virtual world over the last 18 months would say we'd much rather be in the courtroom than on a video doing this, that there are benefits that you get, that we get. So why would it have to be a sole benefit in order to get the reasonable inference drawn? Well, I think that in this instance, the way plaintiffs have pleaded is they have pleaded as the court needs to make an inference based on the fact that it's not in person. They haven't pled anything else. And we are still at the pleading stage. And at the end of the day- And that is a big problem for me, that we are at the pleading stage. You see, the way I am thinking of it right now, but can, you know, be dissuaded certainly, is that I don't think they are bringing, you know, an educational malpractice claim as such, because the premise of one would be that the university offered a subpar curriculum or behaved unreasonably in the way it carried out its educational mission. I don't think that's what the plaintiffs are alleging here. I think that the case is recognized if a plaintiff can point to allege a specific contractual promise, or that the university wholly failed to deliver on that promise, you'd have a viable claim for breach of contract rather than an impermissible claim for educational practice. The plaintiffs here are pointing to a specific contractual promise for in-person instruction that is implicit in the contract between Loyola and its students. And the question, of course, is whether the allegations support a finding that there was such an implied promise. Well, I think we might need more than just the pleading stage for that. Respectfully, Your Honor, I would disagree. As our papers have laid out, I would say that they have not, they pointed to language to suggest that pre-pandemic, the traditional program was held in person. However, they have not pointed to language to suggest that Loyola can never make any changes to that traditional program. In fact, Loyola has also provided on its website a disclaimer which specifically says that the information in the catalog is for informational purposes only. But isn't even that a dispute, a factual dispute that it might be helpful to get past the pleading stage to delve into? So, Your Honor, we, when plaintiffs raised this issue in the reply, we triple-checked. And what happened is when you go to the Undergraduate Studies Catalog online, there are, within that Undergraduate Studies Catalog, multiple bullet points that a student can click on. One of those links is the course catalog. So the course catalog is part of the Undergraduate Studies Catalog. On that same page, in bold letters, it says Catalog Disclaimer. That disclaimer applies to all of the information contained within the Undergraduate Studies Catalog. Ms. Milton, it's clear that that disclaimer is there for the 2021 course catalog. But of course, the allegations here would pertain to courses that would have been picked from the 2019-20 catalog. I did not see anything in the record that was submitted that would support that that disclaimer was in existence at the time that these students would have selected their courses for the spring of 2020. So, Your Honor, it was a mistake by the university's part. And what I mean by that is- A mistake in terms of what they put in the record or a mistake it wasn't on their, it wasn't, the disclaimer wasn't in the 2019-2020? The disclaimer was part of the 2019-2020 catalog. What happened was, if you back, and we checked this by looking at prior catalogs, the 2019-20 catalog, as well as future catalogs. The disclaimer was always in there. What happened was the cover webpage, so when you open the cover page, it says Undergraduate Studies Catalog. Then it provides the year. It says 2018-2019, 2019-2020, and then it provides all of the information within the course catalog. The person who was taking care of the website did not change the header 2018-19 to 2019-2020. So, when you clicked for the 2019-2020 school year, it still said at the top 2018-2019. However, the course catalog provided the 2019-2020 course descriptions. Is this an issue of fact, though? Because plaintiffs are disputing that the disclaimer was on the 2019-2020 catalog, and the disclaimer certainly would strengthen your position. We're at the motion to dismiss stage. I know you've submitted some support for this position. I didn't see anything along the lines of what you've just described. Your Honor, the first time that plaintiffs raised the issue of that they did not think that the disclaimer was part of the 2019-2020 catalog, the first time they raised it was in the reply. So, wouldn't that be an issue of fact, though? It's not an issue of fact, though, because if you actually go to the website, which plaintiffs have included, as have defendants included, in many website addresses in the briefings, you would see that if you wanted to access the 2019-2020 catalog before you clicked the link, regardless of what the top said, the disclaimer is there. Well, but what if a prospective student only looked on the website and didn't look in the catalog? Well, don't you have a problem? I mean, surely you can see that there's a fact question here. I mean, is the court to just take what you're saying as the gospel and go on from there? I'm not sure I understand your position. No, Your Honor, what I'm saying is that if a student were back in 2019-2020, go to the website in order to access the course catalog before they could click on that course catalog, the disclaimer was still on that front page. But you say it was, they say it wasn't, we're at the motion to dismiss stage. And the court relied on that, the district court relied on that disclaimer, and it is a significant factor in your favor. How can we say that it was there, given the dispute? So, Your Honor, I think that the difference is, is that when plaintiffs make the argument in their reply brief, they say that defendants point to the undergraduate studies catalog, and that the disclaimer is not in the course catalog. But they are trying to make a distinction between the two documents. They are not two distinct documents. The course catalog is part of the undergraduate studies catalog. So, yes, if a student printed out the course descriptions, the disclaimer would not be there, but that is because the disclaimer has been provided before you can even get to the course catalog. What about the fees that were tied to on-campus facilities and resources, like on-campus parking or laboratory fees? Don't those fees present an even stronger claim for a breach of contract? Your Honor, I'm out of time, but I assume you'd like me to answer the question. Of course, of course. And take your time answering. Thank you, Your Honor. So, there are, I think, a couple of problems with the fees argument. So, first, the way that plaintiffs plead the fees allegations, they do not actually plead that those fees entitled them to on-campus, in-person services for the entirety of the spring semester. But even putting that aside, we can take the CTA U-Pass as a prime example, and I actually think that that shows that plaintiffs' claims are even weaker on the fees position. The CTA U-Pass was simply to provide Loyola students with an opportunity to access the CTA. It wasn't a contract, and it certainly does not say it was a contract guaranteeing the plaintiff's in-person access to on-campus services throughout the entirety of the spring 2020 semester. I'd rather you talk about the parking pass. That's what Judge Rovner gave an example of that. The on-campus parking pass? The parking fee. Sure, so they can still use that, but they were able to use it, obviously, at the beginning of the semester, but putting that aside, there still was nothing that said you can own, is it implied that you would have to be on campus to use it? Yes, but that doesn't mean that your expectation of being able to use that throughout the entirety of the semester guaranteed a promise by the university to the students that they would be able to use that pass for the entirety of the semester when changes significantly occurred as a result of a pandemic that no one could have anticipated. What good would being able to park there, which I sincerely doubt they'd let students park it, be if they couldn't leave the parking lot, I mean, if they can't get into the building? Well, I think, Your Honor, they need, plaintiffs still, we are at the pleading stage, and the answer to that is plaintiffs still need to be able to plead that that parking pass guaranteed them the right to park on campus in person, and there are not those allegations currently in the complaint. I'm afraid I'm, well, okay. All right, well, is there something you would like to say to sort of wrap up? I would just say thank you for your time today, and defendants respectfully request that the court uphold the district court's decision, dismissing the plaintiff's case with prejudice. Thank you. Thank you very much. Okay. 36 seconds. No, no, no, Ms. Notawar, I'm gonna give you your full. What did you request? Three minutes, four minutes. Okay, thank you, Your Honor. Because we, you know, we've been peppering you with questions, and we peppered Ms. Milk with questions, and she went over, and whatever. You've got four minutes. Thank you, thank you, Your Honor. A few points. First, counsel began by saying that our complaint kept saying that there was, that the online classes were worthless. That is not what our complaint says. It's a misreading that the district court did, and that they're perpetuating. I direct you to paragraph 69 of our complaint. It does say that it's worthless, but what the quote is, because it was taken out of context, defendant's own pricing structure. That's what Loyola charged for online versus in person. Defendant's own pricing structure acknowledges it is worth significantly less than the value of live classes. I don't think that's the same thing as saying we allege that it's worthless. I think those are the sorts of things that the district court did not, even though it said that they gave the inferences to the plaintiffs, I don't think that the terms of the actual opinion did give the inferences to the plaintiffs as the court is required to do. It is clear, I think, from all the remarks today that there are significant issues of fact and things that are not in the record that we're relying on improperly by the district court. This notion of the disclaimer and where it is located, I still don't understand, frankly, and it is not our burden to plead what the disclaimer was or to include it. We did not include it. It was not included from what I can see. The one that is applicable to the appellants is not included anywhere in the record from what I can see. If you included links in your complaint, the court could certainly click on the links, and the argument is that this disclaimer shows up when you click on the course catalog link. Not from what I see, and we've checked it too, not in what's in the record. It's other years. I guess there's now a claim that someone put the wrong heading on it and had the wrong years on. I have never heard that before. It's 10 minutes ago. It certainly wasn't in the record below or anything like that. I just know when we went to look at it, we clicked on the links, it wasn't the right thing, and now I don't think that's appropriate. Even if the disclaimer has a lot of other problems if you actually look at it, it invites reliance by students because it says this is for informational purposes. This is for you planning your semester. This is for you to look at where these courses are. But if it says it's for informational purposes, it's hard to say that's an express or an applied promise if it's an FYI. But you have to read the entirety of the language because it says at the end, consult with your advisor. That's a promise. You're gonna talk to your advisor about what's. But consult with your advisor doesn't say this is a promise that you're gonna have in-person classes. No, again, it goes back to the totality of everything. And the language of disclaimer violates Illinois law because if you look back at Ross v. Creighton, it says that the course catalog is one of the things you look at to see what the contract is. And now they're saying, no, no, no, you can't do that. And the disclaimer doesn't say this is not a contract. The court got that wrong. How could that violate the law? If the disclaimer puts in context what the contract is? Or the scope of the contract? Well, let's take the steps, right? There isn't a formal contract. If you look at Ross v. Creighton, there isn't a formal contract. But you're arguing that the course catalog is what provides the promise that's the basis of the breach of contract agreement. And if the disclaimer helps define the contours of what's in the course catalog, I don't understand how that could possibly be a violation of the law. Well, the law's saying this is what you look at. And the disclaimer doesn't say you shouldn't look at this. It says you shouldn't assume this is a contract. That's different than saying this is not a contract. Those are two different statements. And the disclaimer does not say this is not a contract. The district court said it says that. But what was provided to us by the defendants does not say what the district court said it says. And I think if you're looking at the contours, and remember, this is something 18, 19, 20-year-olds are supposed to look at. They see 3,000 times in person, somewhere, maybe not even in the year that they're enrolling for classes, it says something like don't assume this is a contract. I mean, that's not really giving them a lot of information about what they're paying $45,000 a year for. So I think that the courts that have said that that is not appropriate, the disclaimers do not negate what's said in the course catalog in the absence of a formal contract for this amount of money for young adults. I think it's important. And just on the last thing, obviously, the parking, I think, is clear. I thank you for your time. And I do think that the district court's decision should be reversed. Thank you, Your Honor. Well, thank you both for your argument. And case will be taken under advisement.